IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ARCHER-DANIELS-MIDLAND COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:19-cv-7950 |
| | ) | |
| v. | ) | |
| | ) | |
| ADM LABS LLC, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) | |

**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

Plaintiff, Archer-Daniels-Midland Company ("ADM"), for its Complaint against Defendant, ADM Labs LLC ("ADM Labs" or "Defendant"), alleges as follows:

**NATURE OF THE ACTION**

1. ADM owns common law rights and multiple federal trademark registrations for its ADM trademark, defined below, which it has continuously and extensively used in connection with its globally-recognized agribusiness since at least as early as 1923. ADM brings this action against Defendant for federal trademark infringement, unfair competition and false designation of origin, common law trademark infringement, and deceptive trade practices for its unauthorized use of the ADM trademark in connection with agricultural products and services.

**THE PARTIES**

1. ADM is a Delaware corporation with its principal place of business at 77 West Wacker Drive, Suite 4600, Chicago, Illinois, 60601.

2. Upon information and belief, ADM Labs is a Delaware limited liability company with its principal place of business at 4785 Tejon Street, Denver, Colorado 80211.

1

3. Defendant is doing business throughout the United States, in the State of Illinois, and in this judicial district.

4. Defendant offers for sale and has sold its products and/or services in the State of Illinois and in this judicial district.

5. Upon information and belief, Defendant is the owner and operator of the domain name and website, www.adm-labs.com.

## JURISDICTION AND VENUE

6. This action is brought pursuant to the Lanham Trademark Act, 15 U.S.C. § 1051 *et seq*. (the "Lanham Act"), the common law of the State of Illinois, and the Uniform Deceptive Trade Practices Act in Illinois, 815 ILCS Section 510/1, *et seq*.

7. This Court has subject matter jurisdiction over this case pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331 and 1338(a) and (b) because it involves an action arising under the Lanham Act.

8. This Court has jurisdiction over the related state and common law claims under 28 U.S.C. §§ 1367(a) and 1338(b) as they arise from the same operative facts or are otherwise so related to the Lanham Act claims that they form part of the same case or controversy.

9. This Court has personal jurisdiction over Defendant and venue is proper in this judicial district pursuant to 28 U.S.C § 1391(b) and (c) because Defendant does business within this judicial district and a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## ALLEGATIONS RELEVANT TO ALL COUNTS

### ADM's Agribusiness

10. ADM was formed in 1902 as a linseed crushing business and is now an international multibillion-dollar agribusiness and one of the world's largest agricultural processing companies and food ingredient providers.

11. ADM owns the largest portfolio of edible oils in the agribusiness industry and supplies soybean, high-oleic soybean, canola, corn, cottonseed, peanut, sunflower, palm, palm kernel, coconut, hydrogenated, and interesterified oils to its customers.

12. ADM also offers hemp seeds, along with other ancient grains and seeds, within its ancient grains and seeds portfolio.

### ADM's ADM Trademark

13. Since at least as early as 1923, and long prior to Defendant's acts complained of herein, ADM adopted, began using, and has continuously used the distinctive ADM trademark in interstate commerce in connection with various goods and services, including agricultural goods and services (the "ADM Mark").

14. As a result of its extensive and continuous use of the ADM Mark, ADM owns substantial rights, including common law trademark rights, in the ADM Mark.

15. ADM owns numerous federal trademark registrations on the Principal Register of the United States Patent and Trademark Office ("USPTO") for the ADM Mark.

16. For example, ADM owns a federal trademark registration for the ADM Mark (Reg. No. 1386430, first use date of at least as early as 1923, registration issued March 18, 1986) for the following goods in International Classes 01, 04, 12, 16, 29, 30, 31, and 39. A copy of the registration certificate is attached hereto as Exhibit 1.

      a.      Class 01: Chemicals for industrial use, namely, ethyl alcohol; ground-up corn cobs for use in future manufacture

      b.      Class 04: Industrial oils for use in chemicals and paints, made from cotton seed, sunflower seed, soybeans, flaxseeds, corn germ and fish.

      c.      Class 12: Barges, vans and railway cars.

      d.      Class 16: House organs

      e.      Class 29: Processed foods namely prepared entrees, namely, textured vegetable protein used as a substitute for meat, cheese, fish and poultry; food oils made from cotton seed; edible sunflower seeds; processed soybeans; edible fish oils; edible flaxseeds; partially finished oils for use by other manufacturers.

      f.      Class 30: Staple foods, namely, processed corn, corn germ, corn syrups, flour, corn starch, cornmeal, grits, spaghetti, sugar, noodles and macaroni

      g.      Class 31: Natural agriculture products, namely, raw peanuts, unprocessed malts, dog and cat food, livestock and poultry feed, unprocessed oats, unprocessed barley, unprocessed corn, unprocessed wheat, unprocessed soybeans, unprocessed flaxseeds, and unprocessed sunflower seeds.

      h.      Class 39: Transportation of agricultural products by truck, barge and rail and storage of agricultural products.

17.      ADM also owns multiple other federal trademark registrations for other goods and services, including but not limited to Registration Nos. 2301968 and 2307492. Copies of those example registration certificates are attached hereto as Exhibit 2.

18.      ADM's Registration Nos. 1386430, 2301968, and 2307492 are valid, subsisting, and incontestable pursuant to 15 U.S.C. §§1065 and 1115(b) and constitute prima facie evidence

of the validity of the ADM Mark and of ADM's ownership of and exclusive right to use the ADM Mark in connection with the goods set forth therein.

19. ADM owns all right, title, and interest in and to the ADM Mark and the goodwill associated therewith in connection with various goods and services, including agricultural products and services.

20. For decades, since its aforesaid adoption and first use, ADM has continuously and extensively used the ADM Mark in United States commerce in connection with various goods and services, including agricultural goods and services.

21. For decades, since its adoption and first use of the ADM Mark, ADM has made significant sales of the goods and services offered under or in connection with the ADM Mark.

22. For decades, since its adoption and first use of the ADM Mark, ADM has invested substantial time, effort, and resources and expended significant sums in promoting and marketing its goods and services sold under or in connection with the ADM Mark.

23. For decades, since its adoption and first use of the ADM Mark, ADM has continuously used the ADM Mark in and on various marketing and promotional materials, including but not limited to labels, websites, and sales presentations.

24. In addition to its inherent distinctiveness and as a result of the above-described extensive and exclusive use and promotion, the ADM Mark has also acquired strong secondary meaning identifying ADM as the source of ADM's goods and services, and ADM owns the goodwill associated therewith.

25. In order to protect its most valuable goodwill associated with the ADM Mark, ADM aggressively protects and enforces its rights in the ADM Mark against unauthorized or infringing uses of its ADM Mark.

**Defendant's Infringing Use of the ADM Mark**

26. Upon information and belief, Defendant markets and sells agricultural products, including hemp and CBD products, and provides various agricultural services such as manufacturing, processing, and distributing hemp-derived products in interstate commerce.

27. Upon information and belief, decades subsequent to ADM's adoption and first use of the ADM Mark, Defendant adopted and began using the ADM Mark and the ADM LABS trademark (the "ADM LABS Mark") in interstate commerce, including in Illinois and this judicial district, in connection with agricultural goods and services.

28. Upon information and belief, Defendant markets and sells goods and services through the website, www.adm-labs.com, which is accessible in Illinois and this judicial district.

**Defendant's Continued Unauthorized Use of the ADM Mark**

29. On September 4, 2019, counsel for ADM sent Defendant a cease and desist letter detailing ADM's extensive rights in the ADM Mark and demanding that Defendant immediately cease use of the ADM Mark in connection with its goods and services. A copy of the cease and desist letter is attached as Exhibit 3.

30. Defendant refused to comply with ADM's demands.

31. ADM has never given Defendant consent or authorization to use the ADM Mark or the ADM LABS Mark or any other confusingly similar trademark in any manner.

32. Upon information and belief, ADM Labs continues to use the ADM Mark and the ADM LABS Mark on its website, www.adm-labs.com, social media platforms, and interactive website pop-up chat feature.

## FIRST CLAIM FOR RELIEF
### Federal Trademark Infringement

33. ADM realleges the allegations of the preceding paragraphs as if fully set forth herein.

34. Defendant's unauthorized use of the ADM Mark in commerce and in connection with agricultural goods and services is likely to cause confusion, mistake, or deception (1) in that consumers are likely to mistakenly believe that the Defendant's goods and services are ADM's goods and services and (2) as to the source, origin, sponsorship, affiliation or approval of Defendant's goods and services by ADM.

35. Defendant's actions constitute trademark infringement in violation of 15 U.S.C. § 1114.

36. Upon information and belief, Defendant's actions were taken with full knowledge of ADM's prior rights in the ADM Mark and deliberately and willfully and with the intention of causing confusion, mistake, or deception, making this an exceptional case and entitling ADM to recover additional treble damages and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

37. By reason of all the foregoing, ADM is being irreparably damaged by Defendant's unauthorized use of the ADM Mark in the manner set forth above and will continue to be damaged unless Defendant is enjoined from using the ADM Mark.

38. ADM is entitled to injunctive relief under 15 U.S.C. § 1116 as there is no adequate remedy at law to fully redress Defendant's illegal conduct.

39. In addition to injunctive relief, ADM is entitled to all damages it has sustained in an amount to be determined at trial including but not limited to three times Defendant's profits and gains as a result of its acts as described above, attorneys' fees and costs of this action.

## SECOND CLAIM FOR RELIEF
### Federal Unfair Competition and False Designation of Origin

40. ADM realleges the allegations of the preceding paragraphs as if fully set forth herein.

41. Defendant's acts are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with ADM, or as to the origin, sponsorship, or approval of Defendant's goods and services by ADM.

42. Defendant's acts constitute unfair competition, false designations, descriptions, and representations in violation of 15 U.S.C. Section 1125(a)(1)(A).

43. Upon information and belief, Defendant's continued use of the ADM Mark is willful, deliberate, intentional, and in bad faith, making this an exceptional case.

44. Defendant's acts are irreparably damaging to ADM and will continue to damage ADM unless enjoined by the Court.

45. ADM has been, and will continue to be, damaged by Defendant's acts as described above in an amount to be determined at trial.

## THIRD CLAIM FOR RELIEF
### Common Law Trademark Infringement

46. ADM realleges the allegations of the preceding paragraphs as if fully set forth herein.

47. ADM is the owner of common law rights in its ADM Mark.

48. Defendant's acts constitute common law trademark infringement in violation of the common law, as they are likely to cause confusion, mistake, or deception, in violation of Illinois common law.

49. Upon information and belief, Defendant's continued conduct is willful, deliberate, intentional, and in bad faith.

50. Defendant's acts are greatly and irreparably damaging to ADM and will continue to damage ADM unless enjoined by the Court.

## FOURTH CLAIM FOR RELIEF
### Uniform Deceptive Trade Practices Pursuant to 815 ILCS Section 510/2, *et seq*.

51. ADM realleges the allegations of the preceding paragraphs as if fully set forth herein.

52. Defendant has engaged in deceptive trade practices within the statutory meaning of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS Section 510/2, *et seq*., by causing a likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of its goods and services, and causing likelihood of confusion as to affiliation, connection, or association between Defendant's goods and services and ADM's goods and services.

53. The unauthorized use by Defendant of the ADM Mark is causing and is likely to continue to cause substantial injury to the public and to ADM.

## PRAYER FOR RELIEF

WHEREFORE, ADM requests judgement against Defendant as follows:

1. Enter judgment that Defendant has violated the Lanham Act, 15 U.S.C. § 1114 and § 1125(a), and the Illinois Uniform Deceptive Trade Practices Act and common law, and that such violations were willful and intentional.

2. Issue a permanent injunction enjoining and restraining Defendant and its parents, subsidiaries, affiliated companies, officers, agents, directors, employees, shareholders and attorneys and all those persons in active concert or participation with, or affiliated with them,

from making any use of the ADM Mark or directly or indirectly engaging in any further trademark infringement or unfair competition, including making, offering for sale, or selling any product or service that features the ADM Mark, the ADM LABS Mark, or any other mark that is likely to cause confusion with the ADM Mark (the "Infringing Goods and Services").

3. Require Defendant to immediately recall from all distribution channels all products, packaging, advertising, and promotional materials bearing the ADM Mark, the ADM LABS Mark, or any other mark that is likely to cause confusion with the ADM Mark.

4. Require Defendant to immediately cease sales of the Infringing Goods and Services in all distribution channels.

5. Require Defendant to immediately destroy or deliver for destruction all Infringing Goods, signs, labels, brochures, advertising, promotional material, prints, packages, dyes, wrappers, receptacles and advertisements in its possession or under its control bearing the ADM Mark, the ADM LABS Mark, and any simulation, reproduction, counterfeit, copy or colorable imitation thereof pursuant to 15 U.S.C. § 1118.

6. Order Defendant to account to ADM all profits wrongfully derived by its unlawful conduct and to pay ADM:

    a. All monetary and/or statutory damages sustained and to be sustained by ADM as a consequence of Defendant's unlawful conduct, including lost profits, in an amount to be determined at trial;

    b. All profits, gains, and advantages obtained by Defendant from its unlawful conduct;

    c. Exemplary damages, including treble damages resulting from Defendant's unlawful conduct;

      d.      Pre-judgment interest on all damages; and

      e.      ADM's costs and disbursements in this action, including its reasonable attorneys' fees.

7.      Direct that Defendant file with this Court and serve on counsel for ADM within thirty (30) days after entry of any injunction by the Court a sworn written statement pursuant to 15 U.S.C. § 1116 setting forth in detail the manner and form in which Defendant has complied with the injunction.

8.      Direct that the Court retain jurisdiction of this action for the purpose of enabling ADM to apply to the Court at any time for such further orders and directions as may be necessary or appropriate for the interpretation or execution of any order entered in this action, for the modification of any such order, for the enforcement or compliance therewith, and for the punishment of any violations thereof.

9.      Awarding to ADM such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

ADM demands a trial by jury of all issues so triable.

Dated: December 4, 2019                                    Respectfully submitted by,

/s/ Mary E. Innis
Mary E. Innis
**INNIS LAW GROUP**
321 N. Clark Street, Suite 2465
Chicago, IL 60654
Telephone: (312) 321-9020
Email: minnis@innislaw.com
*Counsel for Plaintiff, Archer-Daniels-Midland Company*